IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, Trustee,<br><br>    Plaintiffs,<br><br>v.<br><br>INTERNATIONAL COMFORT PRODUCTS, LLC,<br><br>    Defendant. | Case No. 3:07-cv-0383<br>Judge Trauger |

## MEMORANDUM

The Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq.*, provides that an employer that withdraws from a multiemployer pension plan incurs a certain amount of withdrawal liability.[1] Previously, this court found that the defendant was not an "employer" and thus that it incurred no withdrawal liability to the plaintiff pension fund, because it was not a party to the relevant collective bargaining agreement. As described in detail below, the Sixth Circuit vacated that decision and remanded for a determination of whether the defendant had an obligation to contribute to the fund "under applicable labor-management relations law."

---

[1] The MPPAA amended the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Congress' goal was "to protect multi-employer pension plans from the financial burdens that result when one employer withdraws . . . without first funding uncovered liabilities of the plan attributable to the employer." *Cent. States, Se. & Sw. Areas Pension Fund v. Int'l Comfort Prods., LLC*, 585 F.3d 281, 284 (6th Cir. 2009) (quotation marks omitted).

1

This raises the threshold question of whether such determination may be made by this court or whether it can only be made by the National Labor Relations Board ("NLRB"). The court ordered the parties to brief the issue (Docket Nos. 67, 78), and the parties' memoranda and responses (Docket Nos. 79, 80, 82, 83) are currently pending before the court. For the reasons discussed herein, the court finds that federal district court is the proper venue to determine the defendant's obligations "under applicable labor-management relations law."

## BACKGROUND

The facts relevant to this issue are undisputed. Plaintiff Central States, Southeast and Southwest Areas Pension Fund (the "Fund") is a "multiemployer pension plan," as defined by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* *See* 29 U.S.C. § 1002(37). The Fund and its trustee, Howard McDougall,[2] brought this suit against defendant International Comfort Products, LLC ("ICP") to recover approximately $560,000 in withdrawal liability, plus interest, liquidated damages, and attorney's fees. (Docket No. 8 at 9.)

During the relevant time period, ICP manufactured heating and cooling products at a facility in Lewisburg, Tennessee.[3] In 1971, ICP entered into a contract (the "ICP-Top Agreement") with Top Transportation ("Top"), under which Top provided trucking services to

---

[2] The court will refer to the Fund and its trustee collectively as "the Fund" or "the plaintiff."

[3] The court will refer to ICP and its predecessor organizations collectively as "ICP."

ICP.[4] Top, but not ICP, was a signatory to a series of collective bargaining agreements (collectively, the "Top CBA") with Local Union No. 327 of the International Brotherhood of Teamsters, which represented the truck drivers employed by Top. The Top CBA required Top to make contributions to the Fund on behalf of the drivers. Pursuant to the ICP-Top Agreement, Top received reimbursement from ICP for the drivers' salaries and benefits, including Top's contributions to the Fund.

In 2002, ICP terminated the ICP-Top Agreement, and Top, in turn, ceased operations. This triggered withdrawal liability for Top under the MPPAA, which the Fund calculated to be approximately $570,000. In 2003, the Fund received a default judgment against Top in Illinois federal court, but by then Top was defunct and unable to pay. Afterward, the Fund brought this suit, alleging that ICP shared Top's withdrawal liability.

The MPPAA creates withdrawal liability for an "employer" that "withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal."[5] 29 U.S.C. § 1381(a). A "complete withdrawal" occurs when an employer "permanently ceases to have an obligation to contribute under the plan." *Id.* § 1383(a)(1). The defendant filed a Motion for Summary Judgment, arguing, in relevant part, that it incurred no withdrawal liability because it was not an "employer" of the truck drivers. The court granted the defendant's motion and dismissed the plaintiff's claims. (Docket No. 54.) Relying on case law from other circuits, the court held that,

---

[4] In 1992, the parties signed a successor agreement that contained the same relevant terms as the 1971 agreement. For the purposes of this Memorandum, the court will refer to these agreements collectively as the "ICP-Top Agreement."

[5] The amount of the employer's withdrawal liability, which is the "allocable amount of unfunded vested benefits," is calculated pursuant to 29 U.S.C. § 1381(b).

because ICP was not a signatory to the Top CBA and was never contractually obligated to contribute to the Fund, it was not an "employer" for MPPAA purposes. (*Id.* at 11-17.)

The plaintiff appealed, and the Sixth Circuit vacated this court's decision. *Cent. States, Se. & Sw. Areas Pension Fund v. Int'l Comfort Prods., LLC*, 585 F.3d 281 (6th Cir. 2009). Drawing upon ERISA's general definition of "employer," the Sixth Circuit held that an "employer," for the purposes of the MPPAA, is "a person who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Int'l Comfort*, 585 F.3d at 284 (quotation marks omitted). Other circuit courts have interpreted this to mean that the alleged employer must have been *contractually obligated* to contribute to the plan. *Id.* at 285-86 (discussing case law).

The Sixth Circuit, however, looked to the MPPAA's statutory definition of "obligation to contribute," contained in 29 U.S.C. § 1392:

> (a) "Obligation to contribute" defined
>
> For purposes of this part, the term "obligation to contribute" means an obligation to contribute arising –
>
> (1) under one or more collective bargaining (or related) agreements, *or*
>
> (2) *as a result of a duty under applicable labor-management relations law*, but does not include an obligation to pay withdrawal liability under this section or to pay delinquent contributions.

*Int'l Comfort*, 585 F.3d at 286 (quoting 29 U.S.C. § 1392(a)). Thus, the court held, "an obligation to contribute to a plan may arise not only from a contract, but also from 'applicable labor-management relations law[.]'" *Id.* (alteration in original). The court further noted that, in

4

a previous case, the Supreme Court had equated "applicable labor-management relations law" with the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* 585 F.3d at 286 (citing *Laborers Health & Welfare Trust Fund for N. California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539 (1988)).

Because this court had only considered whether ICP was contractually obligated to contribute to the Fund, the Sixth Circuit vacated and "remanded for a determination whether ICP had an obligation to contribute to the Fund 'under applicable labor-management relations law[.]'" *Id.* at 287 (alteration in original). Finally, the appellate court stated: "The question whether that determination can be made only by the National Labor Relations Board, as ICP suggests in its brief, we leave for the district court to answer in the first instance." *Id.*

In response to this court's Order, the parties have fully briefed the latter issue. The plaintiff argues that, because ICP was either the actual employer or the joint employer of the truck drivers, it was obligated to contribute to the Fund under applicable labor law and that this court may determine the existence of such obligation. The defendant argues that only the NLRB has jurisdiction to determine ICP's obligations under the NLRA.

## **ANALYSIS**

The court finds that a federal district court may determine whether labor law imposed an obligation on ICP to contribute to the fund.

Under the MPPAA, only an "employer" can incur withdrawal liability. To summarize the Sixth Circuit's holding, a company is an "employer" if it had an obligation to contribute to the relevant pension fund arising "as a result of a duty under applicable labor-management

relations law." *See* 29 U.S.C. § 1392(a)(2). It seems clear that this obligation to contribute must have existed during the drivers' employment at Top. Ultimately, of course, any such obligation was based on the Top CBA, because that document created the pension obligations in the first place.[6] This court has already found that contract law did not require ICP to follow the terms of the Top CBA, because ICP was not a signatory to that agreement. Now, the relevant issue is whether any provision of labor law required ICP to comply with the terms of the Top CBA.

This raises the question of what the term "labor-management relations law" means, as used in § 1392, and which provisions of such law are "applicable" here. Without question, "labor-management relations law" includes the NLRA, *see Int'l Comfort Prods.*, 585 F.3d at 286 (citing *Advanced Lightweight Concrete*, 484 U.S. at 545-46), and the parties' briefs focus exclusively on that statute.

The plaintiff maintains that ICP had a duty to contribute to the Fund because it was the actual or joint employer of the truck drivers. (Docket No. 80 at 7, 15-16; *see also* Docket No. 37, Ex. 1 at 12-14 (memorandum in support of the Fund's Motion for Summary Judgment).) It is not clear, however, exactly which labor-law provision the plaintiff is relying on for this proposition. The plaintiff vaguely states that "[a]n actual employer or joint employer must comply with an employee's employment rights," as well as with "federal laws and the terms and conditions of employment, including without limitation, the payment of wages and fringe benefits." (Docket No. 80 at 15.) Somewhat more specifically, the plaintiff argues that, "[u]nder

---

[6] Generally speaking, in the absence of an agreement, employers are not required to fund pension benefits for their employees. *See, e.g.*, *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 833 (6th Cir. 2007) ("ERISA does not require an employer to fund a plan . . . .").

the NLRA, the NLRB will order the employer or joint employer to comply with the provisions of a collective bargaining agreement, including without limitation, any obligation to contribut[e] to an ERISA fund." (*Id.*)

In support of this contention, the plaintiff cites several cases concerning the application of § 8 of the NLRA, which prohibits employers from engaging in certain unfair labor practices. 29 U.S.C. § 158(a). In each case, a joint employer violated § 8 and caused certain employees to be terminated, and the NLRB ordered the employer to provide back pay to the terminated employees, including the amount of pension benefits that the employees lost as a result of the termination.[7] *Painting Co. v. NLRB*, 298 F.3d 492 (6th Cir. 2002); *D & S Leasing, Inc. v. Teamsters Local Union No. 964*, 299 N.L.R.B. 658 (1990), *aff'd, NLRB v. Centra, Inc.*, 954 F.2d 366 (6th Cir. 1992); *Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985). These cases all involved violations of § 8(a)(1), (3), or (5) of the NLRA, which, respectively, prohibit an employer from: (1) interfering with its employees' right to organize; (2) discriminating against union members when hiring; and (3) refusing to bargain collectively with its employees' union. 29 U.S.C. § 158(a)(1), (3), (5).

These cases show that joint employers are bound by the prohibitions listed in § 8 and that, when fashioning a remedy for a violation of that section, the NLRB can order the employer

---

[7] The plaintiff also cites two cases that involve areas of law other than labor-management relations. *Grace v. USCAR*, 521 F.3d 655, 665-69 (6th Cir. 2008) (discussing a joint employer's obligations under the Family Medical Leave Act); *Peno Trucking, Inc. v. Comm'r*, 296 Fed. Appx. 449, 455 (6th Cir. 2008) (discussing a joint employer's obligation to pay FICA tax). These cases are irrelevant to the issue of whether any labor-law provision obligates a joint employer to abide by the terms of a collective bargaining agreement that the employer did not sign.

7

to fund lost pension benefits as a component of a back-pay award. Indeed, "[t]he law is clear that health and pension benefits are payable as back pay." *Brown v. NLRB*, No. 89-5396, 1990 U.S. App. LEXIS 1543, at *19 (6th Cir. Feb. 5, 1990). But these cases do *not* show that, absent conduct constituting an unfair labor practice, a joint employer has any duty to comply with the terms of a collective bargaining agreement that it did not sign. Nor does the language of § 8 of the NLRA speak to such a duty. *See* 29 U.S.C. § 158(a).

Here, it is undisputed that ICP never violated § 8 of the NLRA or engaged in anti-union activity. Indeed, the plaintiff explicitly states that it "has not alleged a violation of the NLRA" and that "[t]his case does not involve a representation or unfair labor practice issue." (Docket No. 80 at 10.) It is difficult to see, then, how § 8 is applicable to this case.

Instead, the more relevant source of labor law appears to be the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.*[8] Section 301 of that act provides that "[s]uits for violation of contracts between an employer and a [union] . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The

---

[8] The LMRA amended and added to the NLRA. *See generally* N. Peter Lareau, *National Labor Relations Act: Law and Practice*, § 1.01[2] (2d ed. 2011). In *Advanced Lightweight Concrete*, the Supreme Court did not address whether the Labor Management Relations Act is "labor-management relations law," but it seems self-evident that it is.
    Furthermore, in *Advanced Lightweight Concrete*, there was no reason for the Court to define the precise boundaries of the term "labor-management relations law." The Court only mentioned § 1392(a) of the MPPAA so that it could contrast that provision with § 515 of ERISA, which was the main focus of the case. 484 U.S. at 546, 549 n.16 (stating that the language of § 1392(a) showed that "Congress was aware of the two different sources of an employer's duty to contribute to covered plans" and that, "while withdrawal liability [under the MPPAA] may arise from both contractual and statutory duties, § 515 provides only for a contractual origin for delinquency liability"). In addition, the plaintiff there was alleging that the defendant had violated § 8 of the NLRA. *Id.* at 542.

Sixth Circuit has explicitly stated that, under this provision, a joint employer is liable under a CBA signed by its co-joint employer. *Metro. Detroit Bricklayers Dist. Council v. J. E. Hoetger & Co.*, 672 F.2d 580, 583-84 (6th Cir. 1982); *see also Leber v. Universal Music & Video Distrib.*, 225 F. Supp. 2d 928, 944-45 (S.D. Ill. 2002) (analyzing whether the defendant was a joint employer, in which case it would be bound, under § 301, to the terms of a collective bargaining agreement that it did not sign).

In *J.E. Hoetger*, a contractor was hired to build a community center, and it hired a subcontractor to provide masonry work.[9] 672 F.2d at 581. The agreement between the two provided that: (1) the subcontractor would only hire employees from a certain union; (2) the subcontractor would pay all union benefits; and (3) the contractor reserved the right to escrow funds to ensure that the benefit payments were made. *Id.* The subcontractor hired union employees and employed them under a collective bargaining agreement between the union and a multi-employer bargaining unit that included the subcontractor, *but not the contractor*. *Id.* The CBA provided that the subcontractor would make payments to the union's fringe benefit fund. *Id.* As the work neared completion, the workers struck over the subcontractor's failure to make the agreed contributions. *Id.* The union eventually sued the contractor and the subcontractor under § 301(a) of the LMRA, alleging that both companies had breached the CBA by failing to make the required fringe-benefit payments. *Id.* at 582. The district court found that the contractor was liable under the CBA. *Id.*

---

[9] The plaintiff cites *J.E. Hoetger*, but only for the proposition that "[f]ederal courts routinely decide ERISA matters that may touch upon labor relations." (Docket No. 80 at 11.) Neither party's brief addresses the applicability of § 301 of the LMRA to this case.

9

On appeal, the Sixth Circuit stated that "the primary issue . . . was whether [the contractor] was a 'joint employer' such that it could be bound by the collective bargaining agreement"; alternately, it phrased the issue as whether the contractor "was the Union's 'employer' and therefore liable under the collective bargaining contract pursuant to § 301(a) of the LMRA." *Id.* at 583. The court stated that "[t]here are four factors which must be analyzed in determining whether two companies are joint employers: the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."[10] *Id.* at 584 (citing *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Serv. of Mobile, Inc.*, 380 U.S. 255, 256 (1965)). Ultimately, the court found that the contractor had not exercised a sufficient degree of control over the subcontractor's labor

---

[10] This formulation of the joint-employer test differs slightly from the NLRA cases cited by the plaintiff. In *Centra*, the Sixth Circuit stated that "whether a joint employer relationship exists depends upon 'such factors as the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, in issuance of operating instructions.'" 954 F.2d at 370 n.2 (quoting *W.W. Grainger, Inc. v. NLRB*, 860 F.2d 244, 247 (7th Cir. 1988)). In *Carrier*, the court stated:

> [T]he proper legal standard to determine if a joint employer relationship exists is, "Where two or more employers exert significant control over the same employees – where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment – they constitute 'joint employers' within the meaning of the NLRA."

768 F.2d at 781 (quoting *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)). The Sixth Circuit again recited the latter standard in *Painting Co.* 298 F.3d at 500.

The court expresses no opinion as to whether the standards enunciated in these cases differ materially from the standard applied in *J.E. Hoetger*.

relations to create joint employment, because there was no evidence that: (1) the contractor exercised "any day-to-day control over [the subcontractor's] relations with its employees"; (2) "any actual hiring or firing decisions were made by [the contractor]"; or (3) "[the contractor] supervised [the subcontractor's] employees in the performance of the work." *Id.* at 584-85. Thus, the contractor was not liable, under § 301 and the CBA, for the unpaid contributions to the fringe benefit fund. *Id.* at 585.

*J.E. Hoetger* makes it clear that § 301 of the LMRA binds a joint employer to the terms of a collective bargaining agreement signed by a co-joint employer. Phrased another way, § 301 creates an ongoing duty for a joint employer to abide by the terms of its employees' collective bargaining agreement, regardless of whether that employer signed the agreement. Consequently, if ICP and Top were joint employers, they were jointly liable, under § 301 and the Top CBA, to make contributions to the Fund; if Top had failed to make the contributions required by the Top CBA, the Fund could have recovered damages directly from ICP. In that case, ICP clearly faced "an obligation to contribute" to the Fund arising from "a duty under applicable labor-management relations law." *See* 29 U.S.C. 1392(a)(2). Thus, if ICP and Top were joint employers for the purposes of § 301, ICP was an "employer" under the MPPAA, and it incurred withdrawal liability.[11] *Int'l Comfort Prods.*, 585 F.3d at 286-87.

The defendant's entire argument is that this court has no jurisdiction to adjudicate an employer's duties under labor law, because the NLRB has exclusive jurisdiction of issues

---

[11] The court expresses no opinion as to whether ICP and Top were, in fact, joint employers. The parties dispute the extent of ICP's control over Top's relationship with the drivers.

regarding the NLRA. (Docket No. 79 at 3-16; Docket No. 83 at 3-10.) It is true, generally speaking, that "the [NLRB] has been designated by Congress as the exclusive forum of original jurisdiction for adjudicating questions of representation or unfair labor practices in violation of the NLRA, and that United States District Courts have no such jurisdiction."[12] *Lexington Cartage Co. v. Int'l Bhd. of Teamsters*, 713 F.2d 194, 195 (6th Cir. 1983) (citing 29 U.S.C. § 150, 160; *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938)). But this rule is irrelevant, because this case does not involve questions of representation or unfair labor practices. Instead, the court will interpret and apply § 301 of the LMRA, a provision that explicitly provides jurisdiction to federal district courts. 29 § U.S.C. 185(a); *see also Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279, 1288 (6th Cir. 1986) ("Federal courts have jurisdiction under section 301 of the [LMRA] over suits to enforce collective bargaining agreements. This is true even when the employer's conduct is arguably covered by section 7 or 8 [of the NLRA]."). Accordingly, nothing deprives this court of jurisdiction to determine ICP's duties.

## **CONCLUSION**

For the reasons discussed above, the court finds that it has jurisdiction to determine whether ICP faced a duty under applicable labor-management relations law to contribute to the

---

[12] It is also true, however, that "federal district courts may enforce congressional remedies created by a different federal statute so long as the statute does not conflict with §§ 7 or 8 of the NLRA and so long as litigants do not 'circumvent the primary jurisdiction of the NLRB simply by casting statutory claims [under §§ 7 or 8 of the NLRA] as violations of [an independent federal law].'" *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 610 (6th Cir. 2004) (quoting *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735 (U.S. 1988)) (alterations in original).

Fund. This, in turn, will determine whether ICP incurred withdrawal liability as an "employer" under the MPPAA.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge